NEW JERSEY PATENT CO. et al. v. MARTIN.

(Circuit Court, N. D. Iowa, Central Division. February 22, 1911.)

No. 171.

1. PATENTS (§ 326*)—VIOLATION OF INJUNCTION AGAINST INFRINGEMENT—PUNISHMENT FOR CONTEMPT.

   Where complainants in a suit for infringement, after filing a petition to have defendant adjudged in contempt for violation of a preliminary injunction, filed an amended bill, and on that and the original bill a consent decree was entered for complainants in which they waived all claim for damages, and no costs were awarded in favor of or against either party, complainants were not thereafter entitled to have a fine imposed on defendant in their favor in the contempt proceedings sufficient to reimburse them for their counsel fees, costs, and disbursements in the main case.

   [Ed. Note.—For other cases, see Patents, Cent. Dig. §§ 613–619; Dec. Dig. § 326.*]

2. PATENTS (§ 326*)—VIOLATION OF INJUNCTION AGAINST INFRINGEMENT.

   A defendant *held* in contempt for violation of a preliminary injunction against infringement of a patent.

   [Ed. Note.—For other cases, see Patents, Dec. Dig. § 326.*]

3. CONTEMPT (§ 38*)—POWER TO PUNISH—FORMER ADJUDICATION.

   Where at the time set for hearing a motion to punish defendant for contempt for violation of an injunction, ex parte affidavits taken by petitioners were suppressed on defendant's motion, and the hearing was continued for the taking of testimony, such proceeding did not put defendant in jeopardy nor constitute a bar to a subsequent hearing.

   [Ed. Note.—For other cases, see Contempt, Cent. Dig. §§ 117–121; Dec. Dig. § 38.*]

In Equity. Suit by the New Jersey Patent Company and the National Phonograph Company against Edward H. Martin. On citation for contempt. Defendant adjudged in contempt.

Kelleher & O'Connor and Herbert H. Dyke, for petitioners.
Wesley Martin, for defendant.

REED, District Judge. December 23, 1907, the petitioners, as complainants, exhibited to this court their bill of complaint against the

defendant Edward H. Martin for the alleged infringement by him of United States letters patent No. 782,375, issued to the New Jersey Patent Company February 14, 1905, as the assignee of Jonas W. Alysworth, for alleged new and useful improvements in composition for making duplicate phonograph records. The bill contained the usual prayer for preliminary and permanent injunctions, and for damages and an accounting. A demurrer to it was overruled (see 172 Fed. 760), and the defendant in due time answered the bill January 14, 1908. After due notice to the defendant, a preliminary injunction was granted continuing in force until the further order of the court a restraining order, which was issued December 27, 1907, and duly served upon defendant, enjoining and restraining him from further infringing said patent, or in any way interfering with the carrying out of the selling system of the complainant National Phonograph Company as alleged in the bill, and from directly or indirectly using or causing to be used, selling, or causing to be sold any Edison phonograph records or other apparatus, articles, or devices not licensed by the said complainants embodying or constructed in accordance with the invention and improvements set forth in said patent.

On April 11, 1908, the petitioners, complainants in said suit, presented to the court their petition, alleging upon information and belief that, since the granting of said preliminary injunction and the service of the same upon said defendant, he, the said Edward H. Martin, his agents, servants, and employés, have used, and are continuing to extensively use and sell, phonograph records embodying the invention and improvements set forth in said letters patent in defiance of said injunction and in contempt of this court, to the great and irreparable damage of the complainants. An order was thereupon issued and served upon the defendant requiring him to appear before the court and show cause on or before May 12, 1908, why he should not be punished as for contempt for violating said injunction. The defendant appeared and answered, denying that he had in any way violated the injunction, or that he was guilty of any contempt of the authority of this court. Evidence was then taken by the petitioners in the form of affidavits, without notice to the defendant, in support of their alleged violation of said injunction by the defendant, and the same were presented to the court at the June term, 1908. The defendant appeared at such term, and objected to the use of such affidavits upon such hearing, and moved to strike them from the files upon the ground, among others, that the charge could not rightly be heard or sustained upon ex parte affidavits, and that he had had no opportunity to cross-examine the affiants. This motion was sustained, and the petitioners were then granted leave to take their testimony in support of said alleged violation of the injunction, and the defendant his evidence in opposition thereto, by oral examination of witnesses before a special examiner, each party to give to the other due notice of the taking of such testimony. See 166 Fed. 1010.

In the meantime the petitioners, as complainants in the main suit, proceeded to take their testimony upon the merits of the bill, some of which was taken on and after July 8, 1908, and filed July 15th, and

during its taking it was developed that other persons were or had been engaged with the defendant in the alleged infringement of said letters patent and the violation of said injunction by him. Thereupon, and upon July 14th, the petitioners obtained leave to file, and did file on July 17, 1908, an amended bill of complaint bringing in and making parties defendant to the main suit with the original defendant, Fred N. Martin, M. M. Martin, the Martin Telephone Company, and R. L. Sterling, and alleged that each of said defendants as well as the defendant Edward H. Martin had infringed and were infringing complainants' said letters patent, and asked for damages and an accounting against each, and that they also be enjoined and restrained from further infringing said patent. To the bill as so amended each of the defendants thereto answered on February 25, 1909.

On August 26, 1909, a final decree in the main suit was entered by consent of all the parties thereto, in which it was adjudged and decreed that the New Jersey Patent Company was the sole owner of said patent, that the same was valid, and that the National Phonograph Company was the exclusive licensee of the New Jersey Patent Company to manufacture, sell, and use the invention described in said patent. The complainants waived an accounting and damages as against each of the defendants, and an injunction was granted against them, their clerks, servants, agents, and employés perpetually restraining and enjoining them and each of them from directly or indirectly infringing said patent, or in any manner interfering with the National Phonograph Company in carrying out its selling system as set forth in the bill of complaint as amended. The decree does not provide for costs in favor of or against either party. Afterwards, and in 1910, the petitioners took their testimony in support of their petition alleging the violation by the defendant Edward H. Martin of the preliminary injunction. The testimony so taken shows that in December, 1907, prior to the filing of the original bill, said defendant obtained some 4,000 or 5,000 phonograph records from the Ohio Phonograph Company of Youngstown, Ohio, made according to the complainants' letters patent No. 782,375, and sold by said company in violation of the selling system of the complainant National Phonograph Company, and that the defendant had sold some of such records and offered for sale others in infringement of the patent, and in violation of such selling system; that in March, 1908, after the granting of the preliminary injunction, the defendant also sold and offered for sale, others of said records in violation of said injunction; and complainants now ask that defendant Edward H. Martin be punished as for contempt in so violating the injunction, and that he be also fined in addition to such punishment for the benefit of complainants in an amount sufficient to compensate them for the damages they have sustained because of his alleged infringement of the patent, the fees of their counsel, and for the costs and other expenses incurred by them in prosecuting the contempt proceedings. A summary of such costs and expenses claimed to have been so incurred is set forth in the brief of counsel for the petitioners as follows:

Klehm, receipts for disbursements (itemized)...................... $ 532 62
H. H. Dyke, counsel fees.......................................... 350 00
Other counsel.................................................... 975 00
Witnesses (mileage and attendance)............................... 271 83
Examiner & stenographer taking testimony......................... 305 00
Sheriff's and clerk's fees....................................... 81 40
Printing ........................................................ 277 50

Total  .....................................................$2,793 35

In addition is a claim for damages for injury to the business and trade of petitioners, and for additional fees of counsel in presenting this motion to the court, which it is claimed cannot be definitely known at the time of making such summary.

[1] It is needless to say that defendant should not be punished to the extent claimed for the benefit of the complainants. The damage to complainants and injury to their business, if any, because of defendant's infringement of the patent and his violation of the selling system of the National Phonograph Company, occurred wholly or nearly so by reason of his infringement of the patent before the filing of the original bill and the issuance of the preliminary injunction, and for all such damages and injuries, if any, the complainants waived their right thereto by consenting to the decree which was entered on the 26th day of August, 1909, and they cannot now recover such damages by way of punishment of the defendant to be imposed for their benefit. The sales by the defendant after the issuance of the preliminary injunction caused no material damage to the complainants in addition to the damages caused prior to the filing of the bill. In any event, such damage, if any, was caused prior to the filing of the amended bill in July, 1908, and might have been recovered upon the final hearing but for complainant's waiver thereof in the final decree. The defendant therefore can rightly be punished only for his violation of the preliminary injunction, which punishment may include the reasonable costs and expenses of the prosecution for such violation.

[2] The defendant is a man of intelligence, and the evidence convinces beyond any doubt that he intentionally violated the preliminary injunction. His efforts to show that the sales of phonograph records subsequent to the issuance of the injunction were by the Martin Telephone Company or its general manager and the Martin Music Company without his knowledge is a mere ruse to shift the responsibility for such sales. The Martin Telephone Company is a corporation organized under the laws of Iowa, in the name of which the defendant conducts most of his business. He was its president and principal stockholder, and controlled the management of all of its affairs. The defendant M. M. Martin is his wife, and is or was a stockholder of the telephone company and its secretary, but took no active part in the management of its business. There was but one other stockholder and he owned only a nominal amount of its stock, and the defendant Sterling was an employé under the title of manager or general manager, but acted under the general directions of the defendant Edward H. Martin. The Martin Music Company was another name under which the defendant conducted a business of dealing in musical instru-

ments, sheet music, and other goods usually carried by such dealers, and, while there is some evidence that this business was turned over to his son Fred M. Martin prior to the commencement of the suit, the evidence leaves no room to doubt that the defendant himself sold a number of these phonograph records, and received the pay therefor after the preliminary injunction was served upon him. The violation of the writ was deliberate and intentional, and cannot be overlooked. Parties must know that writs of injunction are not issued by the courts as a mere pastime and for their own pleasure, to be observed, or not as those against whom they are issued may elect, but are issued to protect and preserve the property rights of parties pending litigation between them; and those against whom they are issued and upon whom they are served must be given to understand that any intentional violation of them will not be tolerated, but will be punished, and by imprisonment if necessary, to vindicate the authority of the court and protect the rights of parties involved in the controversy in which they are issued.

[3] The contention of counsel that the defendant has been once in jeopardy because of the proceedings at the June term of court, 1908, when the affidavits were suppressed at his instance, and that he cannot now be rightly tried for such alleged contempt, is untenable. See Murphy v. Massachusetts, 177 U. S. 155-159, 20 Sup. Ct. 639, 44 L. Ed. 711.

There was then no hearing upon the merits of the alleged contempt, but only a preliminary hearing at the instance of defendant upon the question of the competency of the ex parte affidavits which complainants proposed to offer in support of the alleged contempt. There was in fact no other hearing, the testimony contained in such affidavits was not considered, the charge against the defendant was not heard, and the question of his guilt or innocence of such charge is now presented for the first time for determination. The defendant's plea or defense of prior jeopardy is therefore overruled, and he will be fined in the sum of $350 because of his violation of the preliminary injunction, and the costs of taking the testimony before the examiner which was begun February 5, 1910, including the statutory fees and mileage of witnesses examined at such hearing and the legal fees of the examiner and stenographer for taking such testimony, and the other taxable costs that pertain alone to the contempt proceedings. If such fine and costs are not paid within five days after the filing of this opinion and order, the defendant will stand committed to the county jail of Webster county, Iowa, until they are paid; and the clerk will issue the proper warrant so committing him. Of the $350 when paid the clerk will pay the petitioners $150 to apply upon the services of their counsel that pertain alone to this contempt proceeding.

It is ordered accordingly.